DECISION AND JUDGMENT ENTRY
{¶ 1} David A. Pottmeyer ("Husband") appeals the judgment of the Washington County Court of Common Pleas granting him and his former-wife, Sara J. Pottmeyer ("Wife"), a divorce from each other. Husband contends that the trial court abused its discretion by selecting a date other than the date of the final divorce hearing as the termination date of the marriage for purposes of classification and valuation of marital property. Because we find that there is some competent, credible evidence to support the date that the trial court selected, we cannot say that the trial court abused its discretion in selecting a termination date other than the date of the final divorce hearing. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The record reflects that Husband and Wife married on July 29, 1978. Two children were born as issue of their marriage, namely, Layne Alyssa Pottmeyer (DOB: February 7, 1984), and Blake David Pottmeyer (DOB: October 10, 1987). Layne emancipated during the course of this litigation. At the time of the final hearing, the parties owned two parcels of real property, the marital residence and a farm. The marital residence was purchased a few weeks before the marriage, and was paid for with marital funds during the course of the marriage. The mortgage on the marital residence secured an equity credit line with a $60,000 credit limit. The parties purchased the farm in 1996 and paid for it with marital funds. At the time of the final divorce hearing, a mortgage of approximately $150,000 encumbered the farm.
 {¶ 3} At the time of the final divorce hearing, Husband worked for Dimex and earned approximately $43,000 per year. He also had a farm loss of approximately $5,500. In the past, Husband also earned approximately $11,000 per year as a contract well tender for Eastern American Energy Corp. However, the company terminated his contract in December 2001.
 {¶ 4} Wife began working for Vadakin, Inc. as a bookkeeper in 1990, earning six dollars per hour. By 1999, her income increased to $45,000. In 2000, she became president of the company and earned $97,000. In 2001, Wife earned approximately $132,000. In June 2001, Wife and three other Vadakin employees entered into a stock purchase agreement, to purchase Vadakin, Inc. They obtained a $1.68 million bank loan and $560,000 in seller financing, effectively financing one hundred percent of the purchase price. Wife owned fifty-one percent of Vadakin Inc.'s stock, and was personally liable for the loans. Because she fully financed the purchase, she had no equity in her stake of the company at the time of purchase.
 {¶ 5} In September 2001, after an alleged incident of domestic violence, Wife obtained a protective order effectively ousting Husband from the marital residence. Wife continued to occupy the marital residence, and Husband moved to the farm, living in a trailer purchased by his sister. After Husband left the marital residence, Wife obtained counter checks from the bank to access the couple's equity credit line. She issued three checks in an attempt to pay off the outstanding balances on her personal credit cards. One check, in the amount of $6,009, cleared the bank. Before the other checks could clear, Husband discovered what Wife was doing. He ordered the bank to issue him a check for $12,693.09, the remaining balance of the credit limit, which essentially froze the account.
 {¶ 6} On October 11, 2001, Wife filed a complaint for divorce in the Washington County Court of Common Pleas. She obtained temporary orders granting her exclusive occupancy of the marital residence, and ordering Husband to continue making the equity loan, mortgage, insurance, and property tax payments on the parties' real properties.
 {¶ 7} On August 6, 2002, the trial court conducted the final divorce hearing. The trial court heard the testimony of a number of witnesses, including the parties, their emancipated daughter, Wife's business advisors, Husband's sister, Husband's girlfriend, and Husband's friend. Wife's business attorney testified that, at the time of the hearing, Wife's equity in Vadakin had grown to approximately $160,000. The parties testified that they filed separate tax returns in 2000 and 2001, although Husband testified that their accountant advised them to file separately to lower their overall tax burden. The parties testified that their marriage had effectively ended by July 1, 2001, with Husband testifying that it had ended as far back as 1995. Additionally, Wife testified that in June of 2001, the parties did not have any joint bank accounts, and maintained separate finances.
 {¶ 8} After trial, the parties filed proposed findings of fact and conclusions of law. Husband suggested that the date of the final hearing should be the termination date of the marriage, while Wife suggested that the trial court should use July 1, 2001, as the termination date.
 {¶ 9} The trial court chose July 1, 2001, as the termination date of the marriage and proceeded to divide the marital assets accordingly. The trial court found that on July 1, 2001, Wife had no equity in her shares of Vadakin stock, and that any equity earned after that date was her separate property. The court divided the rest of the property between the parties, and ordered Husband to make an equalizing payment of $31,126.93, resulting in a 50-50 split of the marital assets.
 {¶ 10} Husband timely appealed raising the following assignment of error: "THE TRIAL COURT ERRED IN SELECTION OF A DATE OTHER THAN THE DATE OF THE FINAL HEARING FOR DIVORCE AS THE TERMINATION DATE OF THE MARRIAGE FOR PURPOSES OF DETERMINING MARITAL PROPERTY."
 II. {¶ 11} In his sole assignment of error, Husband contends that the trial court erred in choosing a date other than the date of the final divorce hearing as the termination date of the marriage. The trial court has broad discretion in choosing the appropriate marriage termination date for purposes of property valuation. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Therefore, we will not disturb the trial court's finding absent an abuse of discretion. Id. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, citing Berkv. Matthews (1990), 53 Ohio St.3d 161, 169. However, the trial court's discretion is not unlimited. Berish at 321, fn. 1, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
 {¶ 12} As we have previously noted, "[t]he duration of the marriage is critical in distinguishing marital, separate and post-separation assets and liabilities, and determining appropriate dates for valuation." Eddy v. Eddy, Washington App. No. 01CA20, 2002-Ohio-4345, at ¶ 23, citing Berish, supra. R.C.3105.171(B) requires the trial court to make an equitable division of the marital property.
 {¶ 13} The statute does not explicitly define "marital property." However, it does define "separate property" to include: an inheritance by one spouse during the course of the marriage; real or personal property acquired by one spouse prior to the marriage; passive income and appreciation acquired from separate property during the marriage; any real or personal property acquired by one party after a court issues a decree of legal separation; personal or real property excluded by a valid antenuptial agreement; personal injury awards, to the extent that they are not compensation for lost marital earnings or reimbursement for expenses paid with marital funds; and, any gift of personal or real property proven by clear and convincing evidence to have been given to only one spouse. R.C.3105.171(A)(6)(i)-(vii). Thus, marital property generally consists of property acquired by the parties "during the marriage" that does not qualify as separate property.
 {¶ 14} R.C. 3105.171(a)(2) provides: "`During the marriage' means whichever of the following is applicable: (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation; (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court."
 {¶ 15} Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of division of marital property, is the date of the final divorce hearing. Bowen v. Bowen (1999),132 Ohio App.3d 616, 630. However, the statute also permits a trial court to select a different date of termination, if it considers the date of the final divorce hearing to be "inequitable[.]"
 {¶ 16} We have previously emphasized, "when determining the term of the marriage, a trial court should be guided by equitable considerations and should take into account the unique facts and circumstances present in each particular case." Allen v. Allen
(Feb.26, 1998), Scioto App. No. 97CA2498. We have also noted that, "[g]enerally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts. Courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home. Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." (Citations omitted.) Eddy, at ¶ 24, citing Gullia v. Gullia
(1994), 93 Ohio App.3d 653, 666; Day v. Day (1988),40 Ohio App.3d 155, 158.
 {¶ 17} The Supreme Court of Ohio has noted: "The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. * * * [T]he precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitablenessof the result reached that must stand the test of fairness onreview." (Emphasis added.) Bowen, supra, citing Berish at 319-320.
 {¶ 18} In discussing the Supreme Court's decision inBerish, the Tenth District Court of Appeals noted: "TheBerish court recognized that equity relies on pragmatic considerations as to when a marriage irretrievably breaks down and whether a de facto termination of a marriage is equitable under the circumstances in relation to the valuation and division of marital property. Implied in the Berish opinion is that assets acquired after a marriage irretrievably breaks down are not acquired through the joint efforts of the parties, but by the sole actions of the respective parties. Thus, it would be inequitable to value and distribute assets when one party did nothing to contribute to their production as part of the marital economic partnership.
 {¶ 19} "We construe the Berish and Day cases to hold that an alternative valuation date should be employed when the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other for each other's benefit as would partners in a shared enterprise or joint undertaking." (Emphasis sic.) Rogers v. Rogers (Sept. 2, 1997), 10th Dist. App. Nos. 96-APF10-1333 and 96APF01-67.
 {¶ 20} Here, the trial court found that the parties' marriage terminated on July 1, 2001 for purposes of the valuation and distribution of marital property. The trial court noted that, "[b]oth parties testified that the marriage had effectively terminated by July 2001. Both parties had extramarital affairs during the marriage. In fact, [Husband] testified on cross that the parties['] marital relationship terminated several years ago." Additionally, we note that Wife testified that by June or July 2001, the parties had no joint bank accounts. The home equity line of credit, secured by the marital residence, and the mortgage on the farm were their only joint financial obligations.
 {¶ 21} Here, the testimony of both parties supports the trial court's finding that the marriage terminated on July 1, 2001. Hence, we find the trial court did not abuse its discretion in selecting the de facto termination date for the marriage. Accordingly, we overrule Husband's sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGEMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee shall recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J., Concurs in Judgment and Opinion.
Evans, J., Not Participating.