[Cite as *Cochran v. Cochran*, 2025-Ohio-2565.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| Tonya J. Cochran, | : | Case No. 24CA21 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| David M. Cochran, | : | |
| Defendant-Appellee. | : | **RELEASED 7/18/2025** |

_____
<u>APPEARANCES</u>:

Tonya J. Cochran, Glouster, Ohio, pro se.

K. Robert Toy, Athens, Ohio, for appellee.
_____
Hess, J.

{¶1}   Tonya J. Cochran appeals from the final divorce decree issued by the Athens County Common Pleas Court, Domestic Relations Division. Tonya contends that the trial court erred when it failed to determine the date of termination of the marriage, the duration of the marriage, and a consistent date for valuation of property. She also contends that the trial court erred in finding that a business entity was a separate asset owned by her husband, David M. Cochran. Last, she contends that the trial court erred by issuing a distributive award related to the marital residence.

{¶2}   We find that the trial court failed to specify the dates it used to determine the beginning and ending of the marriage and make other required statutory findings. Thus, we cannot engage in meaningful review of the trial court's division of martial and separate property or the sum of the distributive award. We sustain the assignments of

error, reverse the judgment, and remand the cause for further action consistent with this judgment.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶3}**   On April 19, 2022, Tonya filed a complaint for divorce from David. She alleged that the couple married on July 4, 2013 and had no children born of the marriage. Tonya alleged that the business known as Matt Cochran Trucking, LLC was a business in possession and control of marital property, and she requested that she be awarded a divorce decree and an equitable division of all assets and liabilities. David answered and denied that Matt Cochran Trucking was in possession and control of marital property. The matter proceeded to a final divorce hearing on June 20, 2024.

**{¶4}**   Tonya represented herself at the final hearing[1] and testified that David had possession of all the business assets owned by Matt Cochran Trucking and that he has certain marital property that included items such as lawnmowers, weed eaters, generators, power washers, motorcycles, an RV and camping equipment, and decorations. Tonya was residing in the marital home during the divorce proceedings, which was a trailer that had additional rooms constructed onto it and was on land that was owned by a third party. The trailer portion of the residence was transportable. Tonya testified that during a hearing in a separate lawsuit in April 2023, David stated that he did not want the home and that it was not worth moving. Therefore, when she received an eviction notice from the landowner, she removed her personal property from the home, but also all the cabinetry that had been installed in the house and put it in storage. Tonya testified that the very next day after she received the eviction notice the home was

---

[1] Tonya had been represented by two different attorneys at different times throughout the course of the proceedings, but both attorneys requested and were granted permission to withdrawal as counsel.

burglarized and David's guns and certain other of his possessions were stolen from the home.

{¶5}  On cross-examination, Tonya reviewed an itemized list of assets, identified as Exhibit 1. The list itemized property that was in Tonya's possession and property that was in David's possession (such as the lawnmowers and weed eaters she had previously testified about). Tonya denied having possession of certain items on the list but admitted she had possession of other items. She also disputed some of the valuation figures for the assets and gave her opinion of the values. Tonya conceded that in addition to removing the home's cabinetry, she removed a bathroom vanity and mirror and had them installed in her new home. Tonya also conceded that many of the items she removed were marital property. She estimated that she had approximately $5,000 in her retirement account, though she agreed that, based on the paystub introduced as Exhibit 2 during her cross-examination, she had $137.67 deposited into her account every two weeks for approximately three years (which would total approximately $10,700 in retirement savings).

{¶6}  Following her cross-examination testimony, Tonya rested her case and did not submit any exhibits for admission into evidence.

{¶7}  David testified that he had been in the family trucking business his entire life and had also worked in the coal mining industry. David's trucking business before he married Tonya was called Legend Trucking. Before he married Tonya, he was living in a trailer he purchased that was on his father's land. After his father died, his uncle owned the property but then lost it and it was now owned by a third party. David remodeled and added on to the trailer after he married Tonya but admitted that the construction he did to

his trailer was on land that he did not own, which turned out to be a bad idea. As a result, the landowner eventually evicted them from the property. David testified that the trailer portion of the home was valued by a court at $16,074 in a separate legal proceeding.

{¶8}    David testified that Tonya had sole possession of the home after she filed for divorce and that she destroyed it while it was in her possession. She left meat in the freezer that thawed and leaked out onto the floors and created an extremely offensive odor. She also removed all the cabinets and faucets. She left bags of trash piled everywhere and the entire place was ransacked. David testified that he would like a court order for a distributive award of $51,031.96, which was the value of the custom cabinetry Tonya removed. David would have liked to have moved the trailer portion of the home, which was his separate property, to other land, but he obtained an estimate to do that and, after what Tonya did to it during her occupancy, it would not be worth it to clean, try to remove the odor, and move it.

{¶9}    David also testified about the itemized list of property on Exhibit 1 and gave his valuation of the items. David testified that he believed Tonya had the rifle his father purchased for him as a Christmas gift and wanted her to return it. David testified that he prepared best estimates for the value of the items on Exhibit 1.

{¶10}  David testified about his trucking business. He started the trucking business in 2008 and never comingled personal or marital funds with the trucking business. Exhibit 1 also contained a list of the trucking business's assets and debts, and David testified about the value of each individual asset and the size of the loans and debts. David testified that he did not use marital assets to make any payments on the company loans or debts and Tonya did not assist him with payments. David testified that the value of his

business debts outweighed the value of the assets. He also testified that the value of the trailer his wife destroyed was $16,720.00 (which was slightly higher than the $16,074.00 value placed on the trailer in the prior court proceeding) and that, for an equitable distribution of the marital assets, his wife owed him $90,780, however he would be satisfied if Tonya returned his guns, class ring, and his son's football jersey.

{¶11} David testified about the wrecked state of the home and testified about a series of photographs of the home showing the missing cabinets, sinks, doors, and other damage. David explained that because Tonya allowed the meat in the freezer to thaw, the home smelled "like if you have a dead cow laying in a field that's laid there for three weeks and it burst open that's what your whole home smells like, I don't know how else, how else to explain it, it's disgusting." After testifying about each photograph and the damages depicted, David testified that he would like a distributive award for the damage Tonya inflicted on the home.

{¶12} Tonya cross-examined David and it was established that Tonya helped David change the name of the business and register it as Matt Cochran Trucking and obtain DOT/PUCO numbers for the company. Tonya also helped with the billing for approximately six to eight weeks.

{¶13} An expert witness from Athens Kitchen and Bath testified and presented an estimate of the costs to repair the damage to the kitchen and bath areas of the home that was dated September 15, 2023. The estimated cost was $51,031.96, which did not include the costs of demolition and clean up.

{¶14} The trial court entered a final divorce decree finding that the parties were incompatible and had lived apart for more than one year. The trial court found that the

value of the property at issue was established and was reflected in Exhibit 1 presented by David. The court found that Matt Cochran Trucking was David's separate property and Tonya had no interest in the business, and that the debts of the trucking business outweighed its assets. The trial court also determined that based on the testimony and photographs, Tonya willfully destroyed property without David's or the trial court's consent. It further found that Tonya took cabinets, a vanity sink and mirror, kitchen island and sink, and kitchen lighting. Based on the expert witness testimony, the court found the value of those items to be $50,737.96 – which does not match the expert's figure of $51,031.96.  The court determined that a distributive award should be granted to David because of Tonya's willful misconduct in severely damaging the marital residence. The entry does not specifically state the amount of the distributive award or determine whether it should be made in a lump sum payment or over time. The court ordered Tonya to return the Matco toolbox, shotgun, rifle, class ring, antique mining lanterns, and son's football jersey to David. Tonya was awarded her retirement amount in full. The court found it equitable for the parties to retain the property in their possession and for David to retain vehicles related to the business.

## II.  ASSIGNMENTS OF ERROR

{¶15}  Tonya presents three assignments of error:

I.      The trial court abused its discretion by failing to determine the date of termination of the marriage, the duration of marriage and/or a consistent date for valuation of property.

II.     The trial court erred by finding that Matt Cochran Trucking was a separate asset.

III.    The trial court erred by issuing a distributive award related to property owned by a third party.

### III.  LAW AND ANALYSIS

### A. Date of Termination, Duration, and Valuation of Property

**{¶16}** Tonya contends that the trial court did not determine the date of the termination of the marriage, the duration of the marriage, or any consistent date used to value the debts and assets of the marriage. She argues that the duration of the marriage is critical to distinguish marital, separate, and post-separation assets and liabilities and to determine the appropriate date for valuation.

**{¶17}**  Domestic relations courts must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). We generally review a trial court's determination in domestic relations cases for an abuse of discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130 (1989).

**{¶18}**  The duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and determining appropriate dates for valuation. R.C. 3105.171 governs the division of marital and separate property and provides:

(A) As used in this section: . . .

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court. . . .

(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided *and shall specify the dates it used in determining the meaning of "during the marriage."* (Emphasis added.)

**{¶19}** In *Liming v. Damos*, 2009-Ohio-6490, ¶ 25-26 (4th Dist.), we recognized "the familiar maxim that a trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property." However, the trial court's discretion is not unlimited. "[I]n making any division of marital property the court must comply with statutory mandates concerning the procedure and analysis it uses in making its distribution. A failure to do so amounts to per se abuse of discretion." *Id*. at ¶ 25.

A court must specify the dates it uses in determining the beginning and ending of the marriage in order to appropriately value each asset and to determine whether it is marital or separate in nature. Failing to specify the precise dates that are used in valuing assets constitutes error on the part of the trial court. "Given the broad discretion a trial court has in determining the duration of the marriage, the trial court must clearly identify the date up on which the marriage was terminated for the purpose of valuing marital assets." Moreover, "[a]n appellate court cannot undertake a review of whether marital assets have been accurately valued and divided until the specific valuation dates used by the trial court have been clearly identified."

Furthermore, "the provisions of R.C. 3105.171 require that a monetary value be placed on every contested asset of the parties in a divorce proceeding." Thus, "the trial court is under a mandatory duty to value and classify the contested property as either marital or separate before distributing it." Finally, the trial court must make findings under R.C. 3105.171(G) "in sufficient detail to allow for meaningful appellate review of its decision." (Citations omitted.)

*Liming* at ¶ 29-30.

**{¶20}** Here, the trial court's order determined that the marriage occurred on July 4, 2013, the divorce complaint was filed April 19, 2022, and the final hearing occurred on June 20, 2024. The trial court also determined that Tonya had exclusive use and possession of the martial residence from September 2022 through August 2023, when

she vacated it. However, when dividing and distributing the property and when making the distributive award, the trial court did not specify which dates it used in determining the duration of the marriage as required by R.C. 105.171(G). and did not specifically identify the date upon which the marriage was terminated for purposes of valuing the marital property.

{¶21} Although David testified about the valuation of the property listed on Exhibit 1 and provided the value of some of the items as of the date of the final hearing,[2] the business loans were valued as of April 3, 2022 (the month the divorce was filed), and the business's fuel bill was valued as of March 14, 2023. The trial court appeared to use David's valuation for some of the property, but used the date of the divorce filing for the business's loan values when it determined that the business's debts exceeded its assets. Additionally, the trial court may have used an August 18, 2023 date to value the trailer portion of the home, which it took from another legal proceeding: "The Court further finds that the separate value of the mobile home was $16,720.00, a[s] set forth in a Journal Entry by Judge Wallace in a companion case . . . Case No. 23CI0044, reference page two of the Journal Entry filed on August 18, 2023."

{¶22} Because the trial court failed to identify specific dates for the duration of the marriage or the valuation of property, we are unable to determine whether the trial court accurately characterized property as marital or separate and whether it made an equitable distribution of the property. We sustain Tonya's first assignment of error. We remand the case for the trial court to identify the dates it used in determining the term of the marriage for purposes of its property valuation. *See Liming* at ¶ 29-30, 32.

---

[2] David's attorney throughout his questioning at the final hearing asked him what value he placed on the property "now" and at various times David clarified that the value was as of "today."

B. Determination of Matt Cochran Trucking as Separate Non-Marital Asset

**{¶23}**  Tonya contends that the trial court erred by classifying the trucking business as a separate asset even though she testified that it was created in October 2013, after the marriage commenced. David testified that the trucking business was started in 2008 and that only the name changed in October 2013.  The trial court determined, "that Matt Cochran Trucking is the Defendant's separate property based upon the testimony of the parties, and that Plaintiff has no interest in said business."

**{¶24}**  Here again, the provisions of R.C. 3105.171 require the trial court to specify the dates it used to determine whether the trucking business is a marital or separate asset. Similarly, the trial court is required to make the valuation of the property in sufficient detail to allow for meaningful appellate review. The trial court stated that it based its decision that the trucking business was a separate asset on the "testimony of the parties," but the witnesses gave conflicting testimony. David testified that the trucking business was started by him in 2008, well before the marriage, and Tonya testified that she did the work to set it up in October 2013, three months into the marriage. Additionally, though the trial court determined the trucking business's debts exceeded its assets, it appeared to use the final hearing date to value the assets (i.e., the trucks), the date of the divorce complaint filing to determine the outstanding bank loan values, and the date of March 14, 2023 to value the $73,024.74 fuel bill owed by the business.

**{¶25}** Because the trial court failed to identify specific dates or the specific evidence or testimony it relied upon to make its determination and it appeared to use at least three different dates to value the various business assets and debts, we are unable to engage in a meaningful review of its decision to divide the marital and separate

property. Thus, we sustain Tonya's second assignment of error based on the same legal analysis used to sustain her first assignment of error.

## C. The Distributive Award

**{¶26}** Tonya contends that the trial court erred in granting a distributive award to David concerning the marital home. She argues that the home was forfeited in a court proceeding, therefore it was inequitable to require her to compensate David for her alleged misconduct. She further disputes the estimated replacement costs of the items she removed. She also argues that it is unclear from the judgment entry the amount of the distributive award granted. David argues that the marital home was not forfeited and the trailer portion could have been moved off the land. He contends he met his burden of proof and the trial court found his testimony to be more credible than Tonya's.

**{¶27}** The distributive award in this case is governed by R.C. 3105.171(E)(4), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." We review a trial court's determination regarding financial misconduct for abuse of discretion. *King v. King,* 2013-Ohio-3426, ¶ 39 (4th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Jacobs v. Jacobs,* 2003-Ohio-3466, ¶ 22 (4th Dist.).

**{¶28}** Here there was photographic and testimonial evidence that Tonya removed the cabinets, sinks, vanities, mirrors, countertops, and lighting from the home while she had sole, exclusive possession of it. Tonya admitted that she had exclusive possession of the home and removed all the cabinets, the vanities and sinks, and many of the other

items and either placed them in her new home or had them in storage. She also admitted that she did not remove the meat from the freezer and allowed it to rot during the time that she had sole, exclusive possession of the home: "[D]id the electric get shut off and I forget to get the meat out of the freezers[?] [A]bsolutely, I wasn't thinking about meat." Tonya also alleged that the very next day after she received a notice from the landowner to vacate the premises, the property was burglarized and unknown burglars created the trashy mess shown in the photographs, not her. The photographs show what appears to be an almost entirely gutted kitchen and bath, full trash bags and loose trash in large piles everywhere, and clutter and debris scatter throughout the interior and exterior of the home.

**{¶29}** David also presented expert witness evidence about the damages caused by Tonya's removal of the items. The expert testified that he went to the home, inspected it, and prepared an estimate to replace the cabinetry, vanity, countertops, and sinks that Tonya removed. It was priced to replace the same type of quality cabinetry that was originally in the home. Tonya did not provide any rebuttal evidence to refute the estimate David submitted through his expert.

**{¶30}** The trial court did not abuse its discretion when it found that David was entitled to a distributive award to compensate him for Tonya's financial misconduct. Even if we limit our focus to the misconduct Tonya admitted she committed, the record supports the trial court's finding that Tonya acted intentionally to defeat David's interest in the home. However, the trial court did not make clear the amount of the distributive award it granted to David, nor did it state whether the payment was to be lump sum or made over time. The trial court found that Tonya purposefully destroyed or removed the cabinets,

vanity sink and mirror, kitchen island, kitchen sink, and lighting. It further found that the minimum amount to replace the items was $50,737.96, which differed from the $51,031.96 figure the expert provided and it is not clear from the record how the sum was derived. The trial court addressed the distributive award several paragraphs later:

> The Court believes that an imposition of a distributive award should be granted to [David] because of [Tonya's] willful misconduct in severely damaging the marital residence. The testimony from lay witnesses and the expert was that the home was ransacked and the smell of the home due to [Tonya's] actions in leaving freezer contents to decay and seep over the marital home was such as to make the home uninhabitable.

**{¶31}** Thus, even though there was evidence that the damage inflicted was close to the $50,737.96 figure the trial court adopted, it is not clear that that sum is the distributive award and, if so, whether it results in an equitable distribution of the martial property. Based upon the state of the record, it is impossible to conduct a meaningful appellate review of the distributive award in this case. We sustain Tonya's third assignment of error. On remand, given that we find that the trial court did not abuse its discretion in finding that a distributive award is appropriate under the circumstances of this case, the trial court is instructed to review the parties' property, both separate and marital, and determine a reasonably equitable distributive award in accordance with R.C. 3105.171(E) and (F). The trial court is also instructed to issue written findings of fact to support the division of property and any distributive awards pursuant to R.C. 3105.171(G). *See e.g., Liming, supra; Baker v. Baker,* 2007-Ohio-7172, ¶ 31 (4th Dist.).

**JUDGMENT REVERSED AND CAUSE REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND CAUSE REMANDED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Domestic Relations Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgement and Opinion.


For the Court



BY: _____
Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**