[Cite as *Molnar v. Molnar*, 2025-Ohio-5114.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| HOLLIS MOLNAR, | : | |
| | : | Case No. 24CA5 |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| STANLEY MOLNAR, | : | |
| | : | |
| Defendant-Appellee. | : | **RELEASED: 11/05/2025** |

_____

APPEARANCES:

Sierra Meek, Nolan & Meek Co., LPA, Nelsonville, Ohio, for appellant.

Adam Salisbury, Pomeroy, Ohio, for appellee.

_____

Wilkin, J.

{¶1} This is an appeal by Hollis Molnar ("Wife") of a Meigs County Court of Common Pleas, Domestic Relations Division, judgment entry that granted her complaint for divorce. On appeal, Wife asserts four assignments of error.

{¶2} In her first assignment of error, Wife claims that the trial court erred by failing to determine the date of the termination of the parties' marriage and by failing to value marital assets accordingly. Because the court did not determine the duration of the marriage, which is per se an abuse of discretion, we sustain Wife's first assignment of error.

{¶3} In her second assignment of error, Wife argues that the trial court erred by finding that Husband satisfied his burden of tracing comingled assets to pre-marital property. Because the duration of the marriage, which the court has yet to determine, is critical in distinguishing marital, separate, and post-

separation assets and liabilities, and determining appropriate dates for valuation of property, Wife's second assignment of error is not ripe for review.

{¶4} In her third assignment of error, Wife asserts that the trial court erred by awarding Husband reimbursement for a marital loan in contravention of former R.C. 3103.06. We find no law that prevents spouses from making loans to one another and there is a law to support such conduct. Therefore, we overrule Wife's third assignment of error.

{¶5} In her fourth assignment of error, Wife asserts that the court erred in refusing to award her spousal support. Because the court is required to consider the duration of the marriage in determining a spousal support award, if any, we find this assignment is not ripe for review.

{¶6} Therefore, we sustain Wife's first assignment of error, overrule her third assignment of error, and find that her second and fourth assignments of error are not yet ripe for review. Accordingly, we reverse in part the trial court's judgment and remand the cause to the trial court for further proceedings consistent with the court's decision.

FACTS AND PROCEDURAL BACKGROUND

{¶7} The parties were married on April 16, 2003. Husband had worked for the New Jersey State Police for 30 years. Wife had worked for Levi Strauss prior to the marriage. Each party owned a home in New Jersey at the time of their marriage. Husband's home was unencumbered, but Wife's had a mortgage. Husband also owned an 81.5-acre property in Meigs County, Ohio that he had acquired in 1991.

{¶8} Husband retired on July 1, 2004, and the parties planned to move to Ohio and build a home on the 81.5-acre parcel.  Husband began receiving payments from his pension and from his deferred compensation (retirement funds).  The estimated value of Husband's deferred compensation fund was $140,000.  Husband's deferred compensation was exhausted by June 2013.  Wife testified that in 2013, she received $19,000 in retirement funds from Levi Strauss.

{¶9} The parties sold their New Jersey homes and the house in Ohio was completed before Christmas 2004, when the parties moved in.  Husband also purchased a 55-acre property in 2010 and in 2016 he purchased a 10-acre property.  Both properties were adjacent to the 81.5-acre property.

{¶10} In September 2016, Texas Eastern Transmission Company (TETC) acquired an easement across the 81.5- and 55-acre properties.  TETC paid the parties $350,000 for the easement.  Subsequently, the parties were paid $125,000 for damages caused by the easement to their property.

{¶11} On November 3, 2022, Wife filed a complaint for divorce in Meigs County, Ohio.  After a four-day final hearing, the trial court issued an amended final order that made numerous findings and conclusions.

{¶12} Relying on Husband's appraisal, the court valued the marital residence at $438,520.[1]  The court calculated the financial contribution that each party made in constructing the residence.  The court determined that Husband

---

[1] The appraiser valued the residence and an imaginary three acres of property upon which it was built at $450,000.  The court found that the three-acre lot was worth $11,480 and subtracted that from $450,000 to find that the value of the residence was $438,520.

contributed $293,000 and the wife contributed $102,000.  The court found that $120,000 of Husband's $293,000 contribution originated from his retirement funds and therefore required an "adjustment."  To determine what portion of the $120,000 was his separate property, if any, the trial court applied the "coverture fraction" devised by the Supreme Court in *Hoyt v. Hoyt.*  53 Ohio St. 3d 177, 182 (1990).  This method "comput[es] the ratio of the number of years of employment of the employed spouse during marriage to the total years of his or her employment" to determine what percentage of retirement was marital property. *Id.*  Husband worked for 15 months while married and worked a total of 300 months prior to his marriage.  Dividing 15 by 300 indicated that .05 or 5% of Husband's retirement income was marital.  The remaining 95% of the retirement funds were his separate property.  The 5% marital portion of the property is divided in half, providing 2.5% to each party.

{¶13} Applying the coverture fraction to the $120,000 of retirement funds in question, the court determined $6,000 was marital property, which was divided equally, with $3,000 going to each party.  The court then adjusted the parties' contribution accordingly by reducing the Husband's contribution by $3000 (making it $290,000) and increasing Wife's contribution by $3,000 (making it $105,000).  Converting those numbers to percentages, the court found that the Wife contributed 27% and Husband 73% of the funding, and multiplying those percentages by $438,520 (appraised value of the home), the court determined that Wife was entitled to receive $118,400.40 and Husband $320,119.60 for their respective contributions in constructing the home.

**{¶14}** The court then determined that the 81.5 acres - that Husband had purchased prior to the marriage and upon which the residence was constructed - was Husband's separate property without analysis.

**{¶15}** The court then considered the 55 and 10-acre properties that Husband had purchased during the marriage. The court again adopted Husband's appraisal, which value both properties together at $163,000. The court found that both properties were purchased using funds from Husband's pension. The court found that at the time these properties were purchased neither party had reportable taxable employment income. Therefore, the court determined that the funds used to purchase these properties were traceable to Husband's pension, which was his separate property. However, the court again applied the coverture fraction to the $163,000 property value and found 5% of the value was marital property, so Wife was entitled to 2.5% of the $163,000, which is $4,075.

**{¶16}** The court also found that Husband "loaned" Wife $42,000 for her business. The court found that the monies loaned were from Husband's pension; therefore, Wife was ordered to reimburse Husband $42,000 less the coverture fraction of 2.5% or $1,050, which equals $40,950.

**{¶17}** The court also ordered Husband to pay Wife $146.46 of spousal support for 60 months. The court calculated this amount based on Husband's monthly retirement income, which is $5,858.33. Because the proceeds for the spousal support would come from Husband's retirement funds, the court again

applied the coverture fraction to find that the monthly support payment would be 2.5% of $5,858.33 or $146.46.

**{¶18}** In sum the court ordered Husband to pay Wife $126,892.32 for her interest in certain assets of the parties, including $118,400.40 her interest in the residence, $4,075.00 her interest in the 55 and 10-acre properties, $3,113.38 her interest in Husband's 6695 account, $253.54 her interest in Husband's Baird IRA, $1,050.00 her interest in the $42,000 loan from Husband. The court ordered Wife to pay Husband $40,000 for his interest in the loan of $42,000 he made to Wife.

**{¶19}** Husband was awarded $2,169.69 of the parties' joint account at Hocking Valley Bank with the remaining balance to be divided equally and the parties were ordered to split equally the joint Baird account (ending 4665).

**{¶20}** Wife was awarded as her separate property the three Baird accounts (ending in 0519, 0929, and 8328) totaling approximately $359,098.49. Husband was to receive free and clear his IRA (0450), his pension from the New Jersey State Police except for spousal support payments.  And Wife retained her company, Austin Molnar, and all its inventory free and clear of any claims from Husband.

**{¶21}** It is this judgment that Wife appeals.

ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT ERRED BY FAILING TO DETERMINE THE DATE OF TERMINATION OF THE MARRIAGE AND BY FAILING TO VALUE THE MARITAL ASSETS ACCORDINGLY.

II.  THE TRIAL COURT ERRED BY FINDING THAT HUSBAND SATISFIED HIS BURDEN OF TRACING COMINGLED ASSETS TO PRE-MARITAL PROPERTY.

III.     THE TRIAL COURT ERRED BY AWARDING HUSBAND REIMBURSEMENT FOR A MARITAL LOAN IN CONTRAVENTION OF R.C. 3103.06.

IV.     THE TRIAL COURT ERRED BY REFUSING TO AWARD WIFE SPOUSAL SUPPORT.

## FIRST ASSIGMENT OF ERROR

{¶22} In her first assignment of error, Wife asserts that the trial court erred by failing to determine the date of termination of the marriage for purpose of determining the duration of the marriage, and by failing to value the marital assets accordingly. She claims that "the duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and determining the appropriate dates for valuation." Wife claims that absent an explanation, a court should use the same dates when valuing marital property.

{¶23} Wife argues that the marriage effectively ended on April 6, 2023, when the court issued temporary orders requiring her to vacate the marital home, both parties to cover separate expenses, and Husband to pay support to her.

{¶24} Wife claims that she provided an appraisal of the marital property effective April 6, 2023, while Husband's appraisal was dated July 14, 2023, which was approximately three months after the proposed de facto termination date of the marriage. Notably, it contained three comparable sales that occurred after April 6, 2023, the de facto termination of the marriage.

{¶25} Wife also claims that Husband's appraiser, at Husband's request, did not value the 81.5 acres of property that Husband alleged was his separate property. Wife claims that without any analysis of the appreciation and labor

pertaining to this property during their 19-year marriage, the trial court summarily determined the property was Husband's separate property and never determined the value of the property.

{¶26} Finally, Wife claims that the parties' financial accounts, which "heavily fluctuated" during their marriage, were valued on September 30, 2022 (Husband's Business HVB account), on November 18, 2022 (Husband's Personal Acct. 6695), on June 30, 2023 (Husband's Baird IRA), and on October 6, 2023 (parties' joint HVB and Baird Accounts) without regard to possible changes of the values of these assets and all after the de facto termination date of the marriage.

{¶27} In response, Husband maintains that an appellant must affirmatively show that the trial court committed an error and resulting prejudice to be a reversible error. Husband claims that the standard of review in this case is whether the trial court abused its discretion. Under this standard, a reviewing court should defer to the trial court's factual findings. Husband argues that an abuse of discretion is more than error of law. Abuse of discretion occurs only when the trial court's decision is unreasonable, arbitrary, or unconscionable.

{¶28} Husband claims the trial court's finding that the 81.5, 55, and 10-acre properties were Husband's separate property has nothing to do with the dates of the competing appraisals.

{¶29} Husband also claims that Wife fails to provide any accounting or suggestion of what she believed was the correct calculation of distribution and

provided "no description of any serious prejudicial injury."  Thus, even if an error

occurred, it was harmless.

Law

**{¶30}** "Domestic relations courts must have discretion to do what is

equitable upon the facts and circumstances of each divorce case."  *Cochran v.

Cochran*, 2025-Ohio-2565, ¶ 17 (4th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d

142, 144 (1989).  We have recognized " 'the familiar maxim that a trial court in

any domestic relations action has broad discretion in fashioning an equitable

division of marital property.' "  *Id*. at ¶ 19, quoting *Liming v. Damos*, 2009-Ohio-

6490, ¶ 25-26 (4th Dist.).  "However, the trial court's discretion is not unlimited."

*Id*.  " '[I]n making any division of marital property the court must comply with

statutory mandates concerning the procedure and analysis it uses in making its

distribution.  A *failure to do so amounts to per se abuse of discretion*.' "

(Emphasis added) *Id*. quoting *Damos* at ¶ 25.

**{¶31}** "Before characterizing property as marital or separate and then

distributing it accordingly, the court must determine the termination date of the

marriage.  R.C. 3105.171(G)."   *Eddy v. Eddy*, 2002-Ohio-4345 ¶ 21 (4th Dist.).

"The duration of the marriage is critical in distinguishing marital, separate, and

post-separation assets and liabilities, and determining appropriate dates for

valuation."  *Id*. at ¶ 23, citing *Berish v. Berish*, 69 Ohio St.2d 318.  R.C. 3105.171

addresses the division of separate and marital property:

> (A) As used in this section: ...
> (2) "During the marriage" means whichever of the following is
> applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court....

. . .

(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided *and shall specify the dates it used in determining the meaning of "during the marriage."*

(Emphasis added.)

{¶32} Thus, in determining the date that a marriage ends, a court can choose the date of the final hearing, or a de facto ending date. "Generally, [if] trial courts use a de facto termination of marriage date [its] when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts." *Eddy*, 2002-Ohio-4345 at ¶ 24 (4th Dist.), citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666 (8th Dist. 1994). "[A] trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." *Id*., citing *Day v. Day*, 40 Ohio App.3d 155, 158 (10th Dist. 1988).

**{¶33}** "A court must specify the dates it uses in determining the beginning and ending of the marriage in order to appropriately value each asset and to determine whether it is marital or separate in nature." *Cochran* at ¶ 19.

> Failing to specify the precise dates that are used in valuing assets constitutes error on the part of the trial court. "Given the broad discretion a trial court has in determining the duration of the marriage, the trial court must clearly identify the date up on which the marriage was terminated for the purpose of valuing marital assets." Moreover, "[a]n appellate court cannot undertake a review of whether marital assets have been accurately valued and divided until the specific valuation dates used by the trial court have been clearly identified."

> *Id.*, quoting *Damos* at ¶ 29.

> Furthermore, "the provisions of R.C. 3105.171 require that a monetary value be placed on every contested asset of the parties in a divorce proceeding." Thus, "the trial court is under a mandatory duty to value and classify the contested property as either marital or separate before distributing it." Finally, the trial court must make findings under R.C. 3105.171(G) "in sufficient detail to allow for meaningful appellate review of its decision." (Citations omitted.)

> *Id.*, quoting *Damos* at 3.

**{¶34}** The selection of a valuation date other than the actual date of divorce is within the discretion of the trial court. *Hall v. Bricker*, 2024-Ohio-1339, ¶ 131 (10th Dist.), citing *O'Brien v. O'Brian*, 1999 WL 355836, * 3 (10th Dist. June 3, 1999). " ' "The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated by pragmatic considerations." ' " *Pottmeyer v. Pottmeyer*, 2004-Ohio-3709, ¶ 17 (4th Dist.), quoting *Bowen v. Bowen*, 132 Ohio App.3d. 616, 630 (9th Dist. 1999), quoting *Berish v. Berish*, 69 Ohio St. 2d 318, 320.   The trial court, however, "must adequately explain its reasons for choosing a different valuation date for certain

marital assets."  *Coble v. Gilanyi*, 1999 WL 1313617, *3 (11th Dist.) Dec. 23, 1999).

Analysis

**{¶35}** The parties were married on April 16, 2003.  Wife filed her complaint for divorce on November 3, 2022.  On April 6, 2023, the court issued temporary orders that provided Husband exclusive use of the marital residence, required Wife to remove her possessions from the residence, and ordered Husband to pay Wife spousal support of $1,000 per month.  The final hearing occurred over four dates, September 22 and 26, 2023, and October 5 and 6, 2023.  Wife asserted that April 6, 2023, was the de facto date of the divorce because of the court's temporary orders.

**{¶36}** The court can rely on the date of the final hearing as the date a marriage ends, or it can choose a de facto date that the marriage ends, but as we recognized in *Cochran*, the court must determine the duration of the marriage, i.e., it must determine the beginning and ending dates of the marriage. The amended divorce decree states that the partes were married on April 16, 2003, but it failed to identify when the marriage ended or otherwise failed to determine the duration of the marriage.

**{¶37}** Husband claims that even if the court erred by failing to determine the duration of the marriage, Wife cannot show harm, so the error was harmless and consequently is not reversible error.  We disagree.  In *Cochran*, we recognized that failing to comply with the statutory mandates regarding division of property, which includes needing to determine the duration of the marriage,

"amounts to per se abuse of discretion." *Cochran* at ¶ 19.  Moreover, the duration of the marriage is critical component in "distinguishing marital, separate, and post-separation assets and liabilities, and determining appropriate dates for valuation." *Id*. at ¶ 18.   Therefore, at this time we cannot properly analyze the court's classification or valuation of the property herein, or even the court's award of spousal support, because all require consideration of the duration of the marriage, which the trial court failed to determine.

**{¶38}** Therefore, we find that the trial court abused its discretion in failing to comply with R.C. 3105.171 (A) and (G) to determine the duration of the parties' marriage.  Accordingly, we sustain Wife's first assignment of error, reverse the trial court's judgment, and remand the matter for the trial court to determine the duration of the marriage.

THIRD ASSIGNMENT OF ERROR

**{¶39}**  In her third assignment of error, Wife asserts that the trial court erred by requiring her to reimburse Husband for a loan in contravention of R.C 3103.06.  Wife claims that the version of R.C. 3103.06 in effect at the time of Husband's loan stated that " '[a] husband and wife cannot, by any contract with each other, alter their legal relationships, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during their separation."  Wife claims that the loan was a contract that "altered" her and her Husband's "legal relations" in violation of former R.C. 3103.06.

**{¶40}** In response, Husband maintains that the trial court had discretion to divide marital assets.  Husband claims that although the trial court used the word "loan" to understand the intent of the parties at the time Husband wrote Wife the $40,000 check for her to start her business, it awarded Wife all the "machinery, stock in trade, and intangible business assets associated with Austin Molnar LLC."  Thus, here the court did nothing more than equitably divide the assets/debt and did not abuse its discretion in doing so.  Therefore, the court should overrule Wife's third assignment of error.

Law

**{¶41}** We review questions of statutory interpretation de novo.  *State v. Erskine*, 2015-Ohio-710, ¶ 22 (4th Dist.), citing *In the Matter of O.H.,* 2010-Ohio-1244, ¶ 8 (4th Dist.).  "[A]n appellate court conducts a de novo review, without deference to the trial court's determination." *State v. Blanton*, 2018-Ohio-1278, ¶ 50 (4th Dist.).

**{¶42}** The dispute here is whether Husband could loan money to Wife. We find that R.C. 3103.05 and R.C. 3103.06, which address contracts in the domestic relations space are pertinent in resolving Wife's third assignment of error.  The trial court found that this loan occurred during 2017 and/or 2018.  Therefore, we consider the version of R.C. 3103.05 and R.C. 3103.06 in effect at that time.

Analysis

**{¶43}** Former R.C. 3103.05 provided that "[a] husband or wife may enter into *any* engagement or transaction with the other, or with any other person,

which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other."  (Emphasis added.).  " 'Any' is a word of flexible meaning, and must be interpreted in the light of the context.  In construing statutes, the word 'any' is equivalent and has the force of 'every' or 'all.' " *Motor Cargo, Inc. v. Bd. of Twp. Trs. of Richfield Twp*., 67 Ohio Law Abs. 315, 320, 117 N.E.2d 224, 227 (C.P. 1953), citing held *Roedler v. Vandalia Bus Lines*, 1935 WL 3686, *1 (Ill. App. Ct. 1935).  Finally, "[w]hen a statute is clear and unambiguous in its terms, we apply it, not interpret it."  *Specialty Restaurants Corp. v. Cuyahoga Cty. Bd. of Revision*, 2002-Ohio-4032, ¶ 11, citing *Soltesiz v. Tracy*, 75 Ohio St.3d 477, 479, (1996).  We find that former R.C. 3103.05 unambiguously permits spouses to enter any agreement with each other that they could enter on their own, which we find would include a loan.

**{¶44}** Nevertheless, Wife claims that R.C. 3103.06 prohibited husband from making a loan to her.  At the time of the loan, R.C. 3103.06 stated that "[a] husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation."  Unlike R.C. 3103.05, we find that the Supreme Court of Ohio has construed the meaning of R.C. 3103.06 in *Coen v. Du Bois*, 100 Ohio St. 17 (The court construed G.C. 8000, but its language is identical to the language in R.C. 3103.06 that was in effect at the time of the Huband's loan).

**{¶45}** In *Coen*, husband and wife, while still married, "each released to the other all claims of dower, distributive share, or other statutory allowance, which one might derive from the other under the laws of this or any other state." *Id*. at 20. The question before the court was "[c]an a husband and wife, during [their marriage] and without contemplating separation, enter into a valid legal contract whereby one releases to the other all claims in the other's property, during lifetime or after death, in consideration of money paid or promised to be paid therefor?" *Id*.

**{¶46}** The court looked to G.C. 8000, which stated that "[a] husband and wife cannot by any contract with each other *alter their legal relations*, except that they may agree to an immediate separation, and make provisions for the support of either of them and their children during the separation." (Emphasis added.) *Id*. 23. The court found that the phrase "legal relations" within G.C. 8000 indicated that the General Assembly intended to limit not only alteration of marital relations, but also "that there should be no alteration either of marital or property relations in the nature of expectancies, except in case of immediate separation." *Id*. at 23-24. Thus, the court found that G.C. 8000 prevented a husband and wife, during their marriage, from agreeing to alter their marriage or alter their expectancies in each other's estate, unless there was an immediate separation.

**{¶47}** Applying that interpretation, the court held that agreement between the husband and wife therein was prohibited because it altered their marriage and each other's property rights without an immediate separation. Therefore, the court reversed the judgment in favor of the agreement.

**{¶48}** Based on *Coen's* interpretation of G.C. 8000, which was identical to R.C. 3103.06 in effect at the time of the loan herein, in this case we find that former R.C. 3103.06 did not prohibit the agreement between Husband and Wife because it was merely a loan; it did not alter their marital status or their "expectancies in each other's estate." *See Coen* at 24.

**{¶49}** Therefore, we find that former R.C. 3103.06 did not prohibit Husband's loan. Accordingly, we overrule Wife's third assignment of error.

SECOND AND FOURTH ASSIGNMENTS OF ERROR

**{¶50}** In her second assignment of error, Wife argues that the trial court erred by finding that Husband satisfied his burden of tracing comingled assets to pre-marital property. In her fourth assignment of error, Wife asserts that the trial court erred in refusing to award her spousal support. Because the duration of the marriage is a consideration in determining the classification and valuation of property, as well as an element to consider for determining whether spousal support should be awarded, the trial court's determination of the duration of the marriage on remand may affect these issues. Therefore, we find that Wife's second and fourth assignments of error are not yet ripe for review.

CONCLUSION

**{¶51}** We sustain Wife's first assignments of error, overrule her third assignment of error, and find that her second and fourth assignments of error are not yet ripe for review. Therefore, we reverse the trial court's judgment and remand the matter to the trial court to address the remaining issues consistent with the court's decision.

**JUDGMENT REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS and that the parties shall equally split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**